IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID POLLOCK,

        Plaintiff,

v.

AMICA MUTUAL INSURANCE CO.,

        Defendants.

No. 3:23-cv-00191-IM

OPINION AND ORDER

**IMMERGUT, J.,**

Plaintiff David Pollock brings claims for breach of contract and declaratory judgment against Defendant Amica Mutual Insurance Company. Notice of Removal [ECF 1] Ex. 3 ("Compl."), at 8–9. Plaintiff alleges that Defendant wrongfully refused to indemnify and defend him against claims brought by the City of Portland after a landslide originating on Plaintiff's property caused damage to neighboring private and public property. *Id.* Plaintiff now moves for partial summary judgment [ECF 29] on the issue of Defendant's duty to defend. Defendant responded [ECF 34] and Plaintiff replied [ECF 37]. For the reasons elaborated below, this Court GRANTS Plaintiff's motion.

## FACTUAL BACKGROUND

Plaintiff owns property on Skyline Boulevard in Portland (the "Property"). Compl. at 1. On February 5, 2017, a landslide occurred on the Property, damaging a public right of way, a

1 – OPINION AND ORDER

public drainage system within the public right of way, private property on the opposite side of a public roadway, a passenger vehicle, and private utilities within the right of way. *Id.* at 2.

A few days after the landslide, Plaintiff received a notice from the City. The notice states that "landslide events have caused damage to your property" and informs Plaintiff that the conditions of his property are a hazard under Portland City Code ("PCC") 27.70.030 because "portions" of his property are "unstable" and "present a potential hazard." Parsons Decl. ¶ 4, Ex. 4 at 1. PCC 27.70.030 states:

> The Director [of Bureau of Development Services] may determine that any clearing, grading, or geologic condition on private property has or may become a hazard to life and limb, or endanger property, or cause erosion, or adversely affect drainage or the safety, use or stability of a public way or drainage channel. Upon receipt of notice in writing from the Director, the owner shall mitigate the hazard and be in conformity with the requirements of this Title. The Director may require that plans and specifications and engineering reports be prepared in compliance with this Chapter.

The notice further informs Plaintiff that he is "required to mitigate the hazard and address the safety of the property and the public." Parsons Decl. ¶ 4, Ex. 4 at 1. To mitigate the hazard, the notice instructs Plaintiff to take immediate steps to temporarily stabilize his property and to work with a geotechnical engineer to permanently stabilize his property by June 2017. *Id.* at 2. The notice directs Plaintiff to submit plans for permanent stabilization to the City that contain the following information: the "[g]eneral vicinity of the site"; "[d]rainage channels, devices, and structures prior to and following the work"; "locations of structures or buildings on the property and within 15 feet of the property"; and a geotechnical engineering report that "shall include an investigation of soil and groundwater conditions." *Id.* at 4.

In May, Plaintiff received a second notice from the City. *Id.* ¶ 5, Ex. 5. The notice informs Plaintiff that although "temporary stabilization measures had been installed," the City had still not received "a permit application for permanent stabilization work." *Id.* The notice reiterates that:

2 – OPINION AND ORDER

> [A] landslide originating on the property damaged the property, the adjacent public right of way, the public drainage system within the public right of way, private property on the opposite side of the roadway, a passenger vehicle traveling within the southbound lane of the public roadway, and overhead private utilities within the right of way. [The City] [has] determined the conditions to be a hazard in accordance with Portland City Code (PCC) 24.70.030, and remedies are required to mitigate the hazard and address the safety of the property, the public right of way, and the adjacent private property. Private property owners are required to mitigate geologic hazards and bring the property into compliance with city code.

*Id.* The notice reiterates that Plaintiff is required to submit plans for permanent stabilization that contain the information enumerated in the February notice. The notice also reiterates the need to take steps to permanently stabilize the property by June 2017. *Id.*

At the time of the landslide, Plaintiff had two insurance policies with Defendant for the Property: a homeowner policy and an umbrella policy. *Id.* Both policies provide defense coverage in the event a "claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." Parsons Decl. ¶ 2, Ex. 2. Both policies also contain owned property exclusions. The homeowner policy states that it does not apply to:

> Property damage to property owned by an insured. This includes costs or expenses incurred by an insured or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an insured location.

Parsons Decl. ¶ 2, Ex. 2. Similarly, the umbrella policy states:

> The coverages provided by this policy do not apply to: 'Property damage' to property owned by an 'insured'. This includes costs or expenses incurred by an 'insured' or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from the residence premises shown in the Declarations.

Parsons Decl. ¶ 5, Ex. 5.

3 – OPINION AND ORDER

After receiving the City's first notice, Plaintiff requested coverage from Defendant. Defendant denied coverage, citing the land-and-earth-movement exception in Plaintiff's homeowner policy. Pl.'s Mot. for Partial Summ. J. at 5. After Plaintiff received the City's second notice, he again requested defense coverage from Defendant. Defendant again denied Plaintiff's request, citing the policies' owned property exclusions. *Id.* Defendant, however, also noted that it "need[ed] additional information to determine whether [Plaintiff] [was] being held liable for [the] property damage claims alleged by the City of Portland," thus leaving open the door to possible coverage. Pollock Decl. ¶ 10, Ex. 6.

A couple months later, Defendant completed its investigation and confirmed its denial of defense coverage, telling Plaintiff:

> We have determined the City of Portland is not pursuing our insured for any third party damages as a result of the subject landslide nor do they intend on pursuing any third party damages in the future. Therefore, in the absence of any third party claim for damages from the City of Portland, there is no duty to defend the insured in this matter.

Pl.'s Mot. for Partial Summ. J. at 6.

Plaintiff then brought this suit, alleging breach of contract and seeking declaratory relief and damages for Defendant's failure to defend and indemnify him. Plaintiff now moves for partial summary judgment on whether Defendant has a duty to defend Plaintiff against the City's claims.

It is important to note that Defendant does not contend that the land-and-earth-movement exception also applies to the umbrella policy. Likewise, Plaintiff does not dispute that the land-and-earth-movement exception precludes coverage under the homeowner policy. Accordingly, the only issue before the Court is whether Plaintiff has defense coverage under the umbrella policy.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

State law governs insurance coverage claims. *Spada v. Unigard Ins. Co.*, 232 F. Supp. 2d 1155, 1159 (D. Or. 2002), *aff'd in part, rev'd in part and remanded*, 80 F. App'x 27 (9th Cir. 2003) (citing *Bell Lavalin, Inc. v. Simcoe and Erie General Ins. Co.*, 61 F.3d 742, 745 (9th Cir.1995)). This Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *Id.*

## DISCUSSION

Plaintiff moves for partial summary judgment on the issue of Defendant's duty to defend. Defendant does not dispute that the City's notices constitute claims that could trigger its duty to defend under Plaintiff's policy. Def.'s Resp. at 10. Defendant disagrees, however, with Plaintiff's assertion that the notices allege facts that trigger its duty to defend, contending that the owned

5 – OPINION AND ORDER

property exclusion in Plaintiff's policy applies because the City's claims allege that Plaintiff is only responsible for repairing damage to his own property. *Id.* at 11.

Under Oregon law, "[a]n insurer's duty to defend its insured is determined by comparing the four corners of the complaint to the four corners of the insurance policy." *Rogowski v. Safeco Ins. Co. of Oregon*, 306 Or. App. 505, 510 (2020). The insurer has a duty to defend if the complaint alleges a claim covered by the policy, "even if the complaint also asserts claims that fall outside the policy's coverage." *Id.* "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford v. Gutoski*, 319 Or. 397, 400 (1994). "If the allegations are ambiguous or unclear, but may be interpreted reasonably to include an incident within the coverage of the policy, there also is a duty to defend." *Klamath Pac. Corp. v. Reliance Ins. Co.*, 151 Or. App. 405, 413 (1997), *op. adhered to as modified on recons.*, 152 Or. App. 738 (1998). The insurer has the burden to prove that an exclusion in the insurance policy applies and eliminates the insurer's duty to defend. *Rogowski*, 306 Or. App. at 510.

**A. Declaration of Amica Claims Adjuster Is Inadmissible Hearsay**

To support Defendant's argument that the City's claims held Plaintiff responsible only for repairing damage to his own property, Defendant submitted a declaration of its claim adjuster Christine Hall. Decl. of Christine Hall [ECF 36]. Hall attests that she contacted the City, and it informed her that it was not holding Plaintiff liable for damage to third-party property and it only sought to hold him liable for repairs to his own property to prevent future landslides. *Id.* at ¶¶ 4–8.

Plaintiff objects to Hall's declaration, contending that it is inadmissible hearsay because it consists of out of court statements being offered for the truth of the matter asserted. Pl.'s Reply at 31. Plaintiff also argues that the declaration runs afoul of Oregon's rule that courts only look to

the four corners of the complaint and policy when determining whether an insurer owes a duty to defend. *Id.* at 29. This Court agrees with both of Plaintiff's objections, and therefore declines to consider Hall's declaration. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

### B. *Spada v. Unigard*

Both Parties cite *Spada v. Unigard Ins. Co.* in their briefs. 80 Fed. Appx. 27 (9th Cir. 2003). The facts in *Spada* track with the facts here. In *Spada*, the plaintiffs received notices from the City of Portland directing them to stabilize their property after a landslide occurred on it. *Spada v. Unigard Ins. Co.*, 232 F. Supp. 2d 1155, 1157 (2002). The plaintiff's insurer, the defendant, denied it had a duty to defend under the plaintiff's policy because of policy's owned property exception. *Id.* at 1160. The district court agreed with the defendant. *Id.*

On appeal, the Ninth Circuit reversed and held that the defendant owed a duty to defend because the City's notices were ambiguous and Oregon law resolves ambiguities in favor of the insured. *Spada*, 80 Fed. Appx. at 29. Specifically, the Ninth Circuit noted that the notices were ambiguous as to whether they referred to "actual 'property damage' that had occurred" or "merely a threat of future 'property damage.'" *Id.* It also noted that the notices were ambiguous as to whether they alleged loss of use of, and thus damage to, the public right of way and neighboring property. *Id.*

Plaintiff argues that *Spada* is instructive here because the notices he received clearly allege damage to third-party property. Pl.'s Mot. for Partial Summ. J. at 18. Defendant disagrees, contending that *Spada* is distinguishable because, here, the owned property exclusion clearly

applies to remedial efforts to prevent future harm. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 18–19.

This Court is not required to follow *Spada* because it is an unpublished decision that predates 2007. Ninth Cir. Fed. R. App. P. 36-3. Even so, this Court notes that *Spada* is supportive of a broad reading of whether claims allege damage to third-party property when determining if a policy's owned property exception applies.

### C. The Owned Property Exception Does Not Apply

Plaintiff's motion turns on whether the owned property exception applies to the City's claims. If "there [is] a possibility that [the claims] would require [Plaintiff] to remedy" damage to third-party property, the exception does not apply. *Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London*, 197 Or. App. 147, 158 (2005), *aff'd*, 341 Or. 128 (2006). Here, the City's claims can reasonably be read to allege that Plaintiff is liable for damage to third-party property. The City's February 2017 notice enumerates information Plaintiff is required to include in his permanent stabilization plans. This information shows that Plaintiff might be required to make repairs to property other than his own.

First, the stabilization plans must include information about the "general vicinity of" Plaintiff's property. Decl. of David Pollock [ECF 30] Ex. 1, at 4. "Vicinity" means "a surrounding area." *Vicinity*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/vicinity (last visited Feb. 7, 2024). The plain meaning of "vicinity" suggests that Plaintiff's plans must extend beyond his property and account for the condition of property beyond his property line, i.e., third-party property. In short, the City's claims suggest that Plaintiff might need to stabilize nearby third-party property in order to stabilize his own property.

The City's claims are therefore ambiguous as to whether they will require Plaintiff to repair third-party property.

Second, the stabilization plans must include information about "drainage channels, devices, or structures prior to and following the work." Decl. of David Pollock, Ex. 1 at 4. This shows that Plaintiff will likely have to make changes to drainage systems because the plans must include information about the systems "prior to *and following* the work." (Emphasis added.) It is unclear whether the drainage systems the plans must address are Plaintiff's or the City's property. The notices, however, allege that the landslide damaged a public drainage system. Accordingly, the notices are ambiguous as to whether Plaintiff is responsible for repairing the damaged public drainage system.

Third, the plans must include information about the "locations of structures and buildings on the property and within 15 feet of the property." *Id.* Again, this suggests that Plaintiff is responsible for remedying unstable conditions beyond his property line.

Fourth, and finally, the notice requires Plaintiff to submit a geotechnical engineering report that "shall include an investigation of soil and groundwater conditions." *Id.* Groundwater is public property, and damage to "groundwater is damage to property other than that of the insured, and the owned property exemption . . . does not apply to it." *Schnitzer*, 341 Or. at 158. The notice is ambiguous as to whether Plaintiff would be responsible for remedying any issues with the groundwater that the investigation reveals. As such, the City's claims are ambiguous as to whether Plaintiff is responsible for remedying third-party property. *See id.* at 159 (concluding that the insurer owed a duty to defend because "there was a possibility that [Department of Environmental Quality] would require plaintiff to remedy the groundwater under" plaintiff's property after issuing plaintiff a notice to monitor the groundwater under its property).

9 – OPINION AND ORDER

Because the City's claims are ambiguous as to whether Plaintiff is responsible for repairing third-party property, the umbrella policy's owned property exceptions do not apply, and Defendant owes Plaintiff a duty to defend against the City's claims.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this 12th day of February, 2024.

                                                                           _/s/ Karin J. Immerugt____
                                                                           Karin J. Immergut
                                                                           United States District Judge